433 A.2d 699 (1981)
John H. REYNOLDS, Weldon B. Reynolds, Jr. and Shirley B. Spruill, Petitioners,
v.
Thelma Ward RUSSELL and Farmers Bank of the State of Delaware, Respondents.
Court of Chancery of Delaware, Sussex County.
Submitted February 25, 1981.
Decided June 22, 1981.
Richard F. Stokes and Stephen P. Ellis, of Tunnel & Raysor, Georgetown, for petitioners.
Houston Wilson and Clayton E. Bunting of Wilson, Halbrook, Bayard, Bunting & Marshall, Georgetown, for respondents.
BROWN, Vice Chancellor.
This action is one which seeks instructions concerning the last will and testament of George T. Russell. The petitioners are John H. Reynolds and Weldon B. Reynolds, Jr., stepsons of the decedent, and Shirley B. Spruill, his daughter. The respondent, Thelma Ward Russell, is the widow of the decedent. She and the respondent Farmers Bank are the co-executors named under the decedent's will. Both the petitioners and the respondents have moved for summary judgment. This is my decision on these cross-motions, the matter having been submitted on the briefs.
The problem concerns the interpretation to be given to language in the decedent's will by which he bequeathed to his surviving widow such portion of his residuary estate as would realize for his estate the maximum Marital Deduction permitted under the Internal Revenue Code of 1954, as amended. The factors relevant to the question to be decided are set forth hereafter.
The decedent, George T. Russell, executed his last will and testament on October *700 10, 1975. He did so after having received assistance from the trust department of his bank in drafting the instrument and after his attorney had reviewed the will and had given his approval to it. The language of the will which is pertinent to the present case is as follows:
"(a) If my wife, Thelma Ward Russell, shall be living at my death,
"(i) I give to my said wife out of the residue of my estate, such fractional share, undiminished by any estate, inheritance, succession and other death taxes, as will obtain for my estate the maximum Marital Deduction permitted under the Internal Revenue Code of 1954, as amended, applicable to my estate, after taking into consideration all other property which passes or has passed to my wife under the provisions of this, my Will, or otherwise, but only to the extent that such interests are for the purposes of Federal estate tax included in determining my taxable estate and are allowed as a deduction in computing said tax. * * * All property allocated to this Marital Gift shall consist solely of property which will qualify for the Marital Deduction. Any provision of this instrument which may appear to conflict with or in any way defeat my intention to reduce the Federal Estate Tax to the minimum shall be construed to accomplish the aforesaid intention.
"(ii) I give one-fourth (¼) of the then remaining residue of my estate, absolutely and in fee, to my daughter, Shirley B. Wooten [now Spruill], if she shall then be living, otherwise, per stripes, to her then-living issue.
"(iii) I give one-fourth (¼) of the then remaining residue of my estate, absolutely and in fee, in equal shares, to such of my stepsons, Weldon B. Reynolds, Jr. and John H. Reynolds, as shall then be living; provided, however, that if either stepson should then be deceased leaving issue then living, I give the share which such deceased stepson would have received, if living, per stirpes, to his then-living issue."
At the time that the decedent executed his will containing the foregoing language, the Marital Deduction permitted under the Internal Revenue Code of 1954, as amended, and as found at 26 U.S.C. § 2056(c)(1), read as follows:
"(1) General Rule.  The aggregate amount of the deductions allowed under this section (computed without regard to this subsection) shall not exceed 50 percent of the value of the adjusted gross estate, as defined in paragraph (2)."
Thereafter, effective December 31, 1976, and as part of the Tax Reform Act of 1976,[*] 26 U.S.C. § 2056(c)(1) was amended to read as follows:
"(1) LIMITATION. 
"(A) IN GENERAL.  The aggregate amount of the deductions allowed under this section (computed without regard to this subsection) shall not exceed the greater of 
"(i) $250,000, or
"(ii) 50 percent of the value of the adjusted gross estate (as defined in paragraph (2)."
The above amendment was accomplished by Section 2002(a) of the Tax Reform Act of 1976, 90 Stat. 1854. In addition, however, at Section 2002(d) of the Act, the effective date of the amendment to § 2056(c)(1), together with a limited exception thereto, was stated as follows:
"(d) EFFECTIVE DATES. 
"(1)(A) Except as provided in subparagraph (B), the amendment made by subsection (a) shall apply with respect to the estates of decedents dying after December 31, 1976.
"(B) If 
"(i) the decedent dies after December 31, 1976, and before January 1, 1979,
"(ii) by reason of the death of the decedent properly passes from the decedent or is acquired from the decedent *701 under a will executed before January 1, 1977, or a trust created before such date, which contains a formula expressly providing that the spouse is to receive the maximum amount of property qualifying for the marital deduction allowable by Federal law,
"(iii) the formula referred to in clause (ii) was not amended at any time after December 31, 1976, and before the death of the decedent, and
"(iv) the State does not enact a statute applicable to such estate which construes this type of formula as referring to the marital deduction allowable by Federal law as amended by subsection (a).,
"then the amendment made by subsection (a) shall not apply to the estate of such decedent."
Here the decedent, George T. Russell, died on July 11, 1979. Prior to his death, he made no changes in his will. Specifically, he made no change in the formula by which he made his bequest to this wife. Moreover, the Delaware General Assembly enacted no statute prior to January 1, 1979, or prior to decedent's death, which construed the type of formula used by the decedent in his will in light of the amendment to 26 U.S.C. § 2056(c)(1).
To complete the picture, the fair market value at the date of death of the gross assets of the decedent, as computed for Federal Estate Tax purposes, has been determined to be $209,984.74.
As a result of these circumstances both the petitioners and the respondent executors have sought instructions concerning the distribution of the assets of the estate. If the permitted Marital Deduction in force at the time of the execution of the will provides the controlling standard, then under the residuary clause of the will 50 per cent will pass to his widow, Thelma Ward Russell, and the remaining 50 per cent will be divided equally between his daughter, Shirley B. Spruill, on the one hand, and his two stepsons, John H. Reynolds and Weldon B. Reynolds, Jr., on the other. If, however, the Marital Deduction bequest to the decedent's widow is interpreted pursuant to the amendment contained in the Tax Reform Act in 1976, then the maximum Marital Deduction would be the greater of $250,000 or 50 per cent of the adjusted gross estate, in which event, the estate being less than $250,000, the entire estate would pass to the decedent's widow. The petitioners urge the former solution. On behalf of the widow it is contended that the latter result must prevail.
The argument made on behalf of the widow is straightforward enough. It is said that it was the intention of the decedent to leave his wife such portion of his estate as would produce the maximum savings of Federal estate taxes. The will provided that this determination was to be made according to the Marital Deduction provision of the Internal Revenue Code of 1954, as amended, and as a consequence the decedent must be held to have contemplated that prior to the date of his death the Marital Deduction provisions of the Internal Revenue Code could be amended either upward or downward, and that his estate would be bound thereby for distribution purposes.
Further, it is argued on behalf of the widow that by granting a two-year moratorium as to the effective date of the amendment to any testator meeting the criteria set forth in Section 2002(d)(1)(B) of the Tax Reform Act of 1976, it was the intention of Congress to give anyone in the decedent's circumstances an opportunity to alter his testamentary plan in the event that the new Marital Deduction provisions did not correspond with his intentions at the time that a will predating the amendments had been made and executed.
Since the decedent here did not die within the two-year grace period granted by Congress, and since the decedent made no effort to change the dispositive provisions of his will during that time, it is argued that the provisions of his will bequeathing his wife the amount of his residuary estate that would produce the maximum estate tax savings must be interpreted under the Marital Deduction provisions of the Internal *702 Revenue Code as they existed at the time of the decedent's death.
I find that I cannot accept this rationale. We are attempting here to ascertain the intention of a testator from the language he chose to use in making disposition of his residuary estate. But for the change in the Federal law that occurred subsequent to the execution of his will, the task would not be difficult. In fact, but for the subsequent change in the law pertaining to the Marital Deduction, there would be no problem for which assistance of the Court would be required. Thus, it is not the act of the testator in making his will that has bred the uncertainty. Rather, it is a subsequent act of government superimposed on the intention of the testator at the time that he made his will that poses the problem. This distinction, I think, provides the key to the answer.
In this regard, it is the generally accepted rule of will construction that in the absence of an intent to the contrary manifested in the will itself, the law in effect at the time of the execution of the will governs the determination of a testator's intent. 80 Am.Jur.2d, Wills § 1123; 95 C.J.S., Wills § 587(f). As stated in 4 Bowe-Parker: Page on Wills, p. 166:
"If the question is limited to one of construction, that is, to determining the intention of the testator from the language of the will when read in the light of surrounding circumstances and the like, it is generally said that the law which was in force when the will was executed is the law which determines the intention of the testator unless the will shows that the testator intends to be governed by the law of some point of time other than that of the execution of the will."
On the facts of the matter as presented, it is undisputed that George T. Russell sought and received assistance from both the trust department of his bank and from his attorney in the preparation of his last will and testament. Under these circumstances, and from the language employed in the will that he executed (i. e., bequeathing a remaining one-fourth of his residuary estate to his daughter and the other one-fourth to his two stepsons), it must be presumed that by adopting the Marital Deduction language in favor of his wife he was aware under the Internal Revenue Code as it then existed that 50 per cent of his adjusted gross estate constituted the largest portion of his residuary estate that he could leave to his wife in order to take maximum advantage of the Marital Deduction estate tax savings. Thus, I think it clear that he intended at the time to bequeath to his wife no more than 50 per cent of his adjusted gross estate, that being under the law then existing the "fractional share . . . as will obtain for my estate the maximum Marital Deduction permitted under the Internal Revenue Code of 1954, as amended." That being the largest share of his estate that he could leave her in order to obtain the maximum Marital Deduction, it obviously explains the bequest of the remaining 50 per cent to his daughter and stepsons. He contemplated a residue of 50 per cent after the gift to his wife, and he intended to leave it to his daughter and stepsons. I fail to see where the language of his will is subject to any other construction under the status of the Internal Revenue Code as it existed at the time that the will was was executed.
Thus, in order for the construction urged on behalf of the widow to prevail, it would have to be shown that the testamentary language used by the decedent evidenced an intention to have the Marital Deduction formula governed by the law existing at another time. But I find nothing to indicate such an intention.
Certainly, by making reference to the "Internal Revenue Code of 1954, as amended" it cannot be concluded that the decedent had future amendments in mind. By 1975, the Internal Revenue Code of 1954 had been amended numerous times and a reference to "as amended" could obviously refer to past as well as future amendments. Being thus equivocal, such a reference could not be said to be directed solely at the law of a future time. Parenthetically, I would *703 note that I cannot imagine that either the trust department of a bank or a knowledgeable lawyer would recommend that the size of a widow's share in her husband's estate be made to depend on the uncertainty of the Federal tax laws such as they might exist at some indefinite future time. Thus I find nothing in the reference to the Internal Revenue Code "as amended" that would indicate an intention of the decedent to have the dispositive provisions of his will governed by the law at a time other than that existing at the time of its execution.
This leaves only the two-year period established by Section 2002(d) of the Tax Reform Act of 1976 to support the position advocated on behalf of the widow. But as I see it, under the aforesaid rule of will construction, this amounts to no argument at all. It is an argument that because the decedent did not take action to alter or clarify the Marital Deduction provision of his will within two years of the otherwise effective date of the amendment to 26 U.S.C. § 2056(c)(1), it evidences an intention on his part to have the bequest to his wife interpreted under the amended Marital Deduction provisions rather than those in existence at the time that the will was executed. But this is an attempt to have the decedent's intention interpreted, not by language in his will showing an intention to have its provisions controlled by the law of another time, but rather by his failure to modify his will as a result of a change in the law subsequent to its execution. This is not permitted under the rule of construction that governs.
Accordingly, the motion of the petitioners for summary judgment will be granted and the motion made on behalf of the respondent co-executors will be denied. An order may be submitted directing the executors of the estate of George T. Russell to distribute his residuary estate assets pursuant to Article 4 of his will in the following manner, to wit, 50 per cent to his widow, Thelma Ward Russell, 25 per cent to his daughter, Shirley B. Spruill, and 25 per cent to his stepsons, John H. Reynolds and Weldon B. Reynolds, Jr., to be divided equally between the two of them.
NOTES
[*] Pub.L.No.94-455, 90 Stat. 1520.